## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | |
| | ) | |
| v. | ) | Criminal Case No. CR-02-00085-001-RAW |
| | ) | |
| WARREN DOUGLAS VANN, | ) | |
| | ) | |
| Defendant/Movant. | ) | |

## <u>ORDER</u>

Now before the court is a *pro se* motion for compassionate release filed by Defendant Warren Douglas Vann ("Defendant"). [Doc. 125]. The Government filed a brief in opposition to Defendant's motion. [Doc. 129]. Defendant filed a reply. [Doc. 132].

In 2002, a federal grand jury charged Defendant with Murder in the First Degree in Indian Country, in violation of 18 U.S.C. §§ 1111(a), 1151 and 1153 (Count One); Use of a Firearm in the Commission of a Violent Crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 924(j) (Count Two); Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2) (Count Three); and Felon in Possession of Ammunition, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2) (Count Four). Following a multi-day trial, the jury convicted Defendant on all counts. United States District Judge James H. Payne sentenced Defendant "to life imprisonment on Count I, life imprisonment on Count II (to be served consecutively with Counts I, III, and IV), 120 months on Count III, and 120 months on Count IV (to be served concurrently with Counts I and III)." *United States v. Vann,* 123 Fed.Appx. 898, 899 (10th Cir. 2005). Defendant appealed, but the Tenth Circuit Court of Appeals dismissed the case following the filing of an *Anders* brief. *Id.*

Approximately two years ago, on August 20, 2021, this court entered a seven-page order denying a prior compassionate release motion filed by Defendant. [Doc. 122]. In his prior motion, Defendant expressed concerns that "all BOP prisons are on the cusp of becoming de facto death row and death traps." [Doc. 117 at 2]. He claimed that he had suffered from "numerous ailments" through the years, including "migraines, diabetes, obesity, dyslipidemia, high cholesterol, and anxiety." *Id.* at 3. He explained that he was a former smoker and considered a chronic care patient

by the BOP, and that he was treated for pneumonia in 2019 and "still suffers from the lingering effects … like shortness of breath." *Id*. Defendant asserted that he had "dedicated himself to his education and rehabilitation" while incarcerated, and that "[t]his factor weighs heavily in support of granting relief." *Id*. at 30. He asked the court to immediately grant his motion "[t]o mitigate the potential catastrophic harm that the COVID-19 pandemic will inflict upon Defendant." *Id*. at 3. The court reviewed Defendant's medical records. At that time, Defendant was 58 years old and was classified at a "Care2" Care Level (stable, chronic care). [Doc. 122 at 6]. The undersigned specifically found that "Defendant may be at greater risk of severe illness from COVID-19." *Id*. The court, however, noted that the BOP had provided appropriate medical treatment for his health conditions, and the court was not persuaded that FCI Coleman Medium (where Defendant was housed at the time) was unequipped to provide appropriate medical treatment if he were to become sick from COVID-19. *Id*. The court was also mindful that Defendant had received two doses of the Pfizer COVID-19 vaccine, and that there were few cases of COVID-19 at Defendant's facility. *Id*. Ultimately, the undersigned did not find extraordinary and compelling reasons warranting compassionate release under step one of the test adopted by the Circuit in *United States v. McGee*, 992 F.3d 1035 (10th Cir. 2021). *Id*. at 7. The court did not address step two or three of the test in *McGee*. Defendant did not appeal.

Defendant is now a 60-year-old prisoner at USP Leavenworth, a Bureau of Prisons ("BOP") facility in Kansas.[1] Defendant has no projected release date due to his life sentence. Defendant requests compassionate release for mostly the same reasons as he did in the previous motion. He contends that he "suffers from hypertension, pre-diabetes, heart disease, anxiety, for each of which he takes medication(s)," and that he has a history of smoking, substance abuse, and obesity. [Doc. 125 at 4]. He adds that, "since his last contraction of COVID," he "suffers from COVID 'long' symptoms, including shortness of breath and an inability to smell."[2] *Id*. He claims his age "places him in the highest-risk category for severe complications due to COVID." *Id*. Defendant further asserts that "[b]reakthrough infections seem to be particularly common with the highly contagious Omicron variant, although vaccination seems effective at preventing serious

---

[1]     *See* BOP inmate locator, https://www.bop.gov/inmateloc/ (last visited September 21, 2023).

[2]     In his reply, he refers back to "long term Pneumonia that causes shortness of breath." [Doc. 132 at 5].

illness, it is not any kind of guarantee, especially with the amount and seriousness of [Defendant's] comorbidities and medical conditions coupled with his age." *Id*. at 9. He adds that "there[']s black mold everywhere" at his current facility in Leavenworth, KS. [Doc. 125-4 at 2]. He then asserts that his current facility does not provide treatment for COVID-19, alleging that "all they do is put you in quarantine." *Id*. He expresses a desire to serve as a caregiver for his elderly mother and brother. *Id*. Defendant explains that he has "taken a lot of educational programs" and received his GED. *Id*. He also claims he has maintained employment while incarcerated and has not missed a restitution payment. *Id*. In addition, Defendant's motion for compassionate release includes a jurisdictional claim. He argues that "the crime for which he was convicted did in fact occur on an Indian Allotment that was subsequently extinguished," that the Federal Government had no jurisdiction in the case "[b]ecause the allotment had been extinguished," and that "this case should have been remanded to the State of Oklahoma for adjudication." [Doc. 125 at 12-13].

The First Step Act, effective December 21, 2018, amended 18 U.S.C. § 3582(c)(1)(A) to authorize a defendant to move the sentencing court for a sentence reduction for "extraordinary and compelling reasons."[3] *See* First Step Act of 2018, Pub. L. No. 115-391 § 603(b), 132 Stat. 5194, 5239 (2018). In the case at hand, the Government concedes that Defendant "has exhausted his administrative remedies." [Doc. 129 at 14]. Even so, the Government contends a reduction in sentence is not warranted. *Id*. at 12-20. The Government points out that Defendant has received all three offered COVID vaccinations, and argues that "the only risk factor Defendant presents is hypertension." *Id*. at 18. The Government further claims Defendant's release would endanger the community, and that the § 3553(a) factors "do not support [his] request for premature, permanent release." *Id*. at 20-22. As for his jurisdictional claim, the Government contends that "federal law alone applies to Defendant's crime." *Id*. at 25.

18 U.S.C. § 3582(c)(1)(A) authorizes this court to modify a term of imprisonment, upon a motion filed by a defendant, after the defendant has complied with the statute's exhaustion requirement. The statutory language was amended by the First Step Act, and § 3582(c)(1) now provides, in pertinent part, as follows:

---

[3]    Prior to the First Step Act, a motion for compassionate release could only be brought by the Director of the Bureau of Prisons.

(c) Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that--

(1) in any case--

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).  It appears from the record that this court has authority to consider modification of Defendant's sentence.  The Government notes that "[o]n November 18, 2020, he sought relief through BOP's internal administrative processes," that "[h]is request was denied on January 22, 2021," and that "he filed a second administrative request, which was denied on April 6, 2021."  [Doc. 129 at 14; Doc. 129-1].  Defendant attaches a copy of his request for reduction in sentence (RIS) dated November 28, 2022, and the request was evidently denied by his warden on December 21, 2022.  [Doc. 125-4 at 3-4].  The instant motion was filed with this court on January 23, 2023.  The Government concedes that Defendant has exhausted his administrative remedies. Accordingly, Defendant is entitled to move this court for relief.

The Tenth Circuit Court of Appeals reviewed the history and text of 18 U.S.C. § 3582(c)(1)(A)(i) and provided the following guidance to courts considering compassionate-release motions:

Under the plain language of the statute, a district court may thus grant a motion for reduction of sentence, whether filed by the Director of the BOP or a defendant, only if three requirements are met:  (1) the district court finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing

Commission; and (3) the district court considers the factors set forth in § 3553(a), to the extent that they are applicable.

*United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021); *see also United States v. Maumau*, 993 F.3d 821, 831 (10th Cir. 2021).

The Sentencing Commission has provided examples of what constitutes an "extraordinary and compelling"[4] circumstance:  (1) the inmate's medical condition (i.e. individual has a terminal illness, or serious physical or medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"); (2) the inmate's age (individual is at least 65 years old, is experiencing a "serious deterioration in physical or mental health because of the aging process," and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less); (3) the inmate's family circumstances (i.e., death or incapacitation of the caregiver of the individual's minor children, or incapacitation of the individual's spouse or registered partner); and (4) other reasons in the defendant's case "[a]s determined by the Director of the Bureau of Prisons."  U.S.S.G. § 1B1.13 cmt. n.1.

In the case at hand, however, Defendant directly filed his motion with the court, and U.S.S.G. § 1B1.13 does not bind the district court when it evaluates a prisoner's compassionate release motion.  *See McGee*, 992 F.3d at 1050 ("We conclude . . . that the Sentencing Commission's existing policy statement is applicable only to motions for sentence reductions filed by the Director of the BOP, and not to motions filed directly by defendants."); *see also United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020) ("Because Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants, Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling."); *United States v. Dean*, No. 21-2082, 2022 WL 484241, at *1 (10th Cir. Feb. 17, 2022) (unpublished) ("[U]ntil the Sentencing Commission promulgates new policy statements, a district court may consider only the first and third prerequisites for compassionate release under

---

[4]     Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  *See* 28 U.S.C. § 994(t).  The section provides that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  *Id.*

§ 3582(c)(1)(A) because currently there are no applicable policy statements under the second prerequisite."); *United States v. Quinn*, No. 22-3262, 2023 WL 5091175, at *1 (10th Cir. Aug. 9, 2023) (unpublished) ("To date, the Sentencing Commission has not issued an 'applicable' policy statement for motions for compassionate release filed by defendants.").  In short, only the first and third steps of the test adopted in *McGee* are relevant here.

With this in mind, the court must decide whether extraordinary and compelling reasons warrant a reduction of sentence under step one of the test adopted in *McGee*.  The court has carefully reviewed Defendant's motion for compassionate release and exhibits, as well as his medical records.  Defendant has aged two years since his prior motion for compassionate release was denied.  Defendant is still classified at a "Care2" Care Level (stable, chronic care).  [Doc. 129-3 at 1].  The Government notes that "[h]is most recent summary of current health problems indicates he has pain in the ankle and foot joint, hyperlipidemia, anxiety, various issues involving his eyes and teeth, hypertension, chronic sinusitis, unspecified abdominal pain, a history of arthritis, and prediabetes," and that he "has active prescriptions for Acetaminophen, Aspirin, Atorvastatin for cholesterol, Lisinopril for blood pressure, Metformin for diabetes, and Sertraline for anxiety."  [Doc. 129 at 17-18; Doc. 129-5 at 1-2, 8].  In other words, he is essentially being treated for the same conditions that he was two years ago.

In the instant motion, Defendant claims "there[']s black mold everywhere" in USP Leavenworth.  [Doc. 125-4 at 2].  Defendant fails to provide any documentation showing how black mold, assuming it is present in the facility, has specifically affected his health.[5]  He also alleges that, "since his last contraction of COVID, [he] suffers from COVID 'long' symptoms, including shortness of breath, and inability to smell."  [Doc. 125 at 4].  Although he now links a shortness of breath claim to COVID-19, he previously linked a shortness of breath claim to the

---

[5]     *See, e.g., United States v. Davila*, No. 20-cr-8(1) (ECT/TNL), 2022 WL 1553569, at *3 (D. Minn. May 17, 2022) ("The problem is that there is no record evidence to support that Mr. Davila's environmental concerns [including black mold] have increased the severity of his preexisting health conditions in such a way to create 'extraordinary and compelling' reasons to warrant release."); *United States v. Doe*, Cr. No. 18-10360-MLW, 2023 WL 4053022, at *2 (D. Mass. June 16, 2023) ("The existence of black mold does not justify, or contribute to justifying, [defendant's] release.").

lingering effects of pneumonia.  [Doc. 117 at 3].  Nevertheless, such claim, that he suffers from COVID "long" symptoms, is unsupported by his medical records.

Nonetheless, the court has again considered Defendant's compassionate release arguments based on his age and his health (e.g., he is now 60, has suffered from numerous ailments through the years, including migraines, diabetes, obesity, dyslipidemia, high cholesterol, pneumonia, high blood pressure, and that he was a former smoker).  In the prior order denying compassionate release, the court concluded that, in light of his age, and having high blood pressure, BMI over 30, and being a prior smoker,[6] "Defendant may be at greater risk of severe illness from COVID-19." [Doc. 122 at 6].  The court finds this still to be true.[7]  Even so, his medical records show the BOP provides appropriate medical treatment for his health conditions, and the court is not persuaded that his facility (now USP Leavenworth) is unequipped to provide appropriate medical treatment for COVID-19.  Moreover, many of the staff and inmates within BOP facilities have been vaccinated, and Defendant received a third dose of the Pfizer vaccine in May of 2022.  [Doc. 129-5 at 13-14].  According to the CDC, "COVID-19 vaccines available in the United States are safe and effective at protecting people from getting seriously ill, being hospitalized, and dying." *See*  https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html  (last  visited September 21, 2023).

Defendant next asserts that his mother is 82 years old and has a bad knee, which causes her to fall, and that she cannot get back up on her own.  [Doc. 125-4 at 2].  He acknowledges that his 64-year-old brother, who allegedly has arthritis in his hands, elbow and shoulder, is "trying to take care of her."  *Id*.  Defendant claims he "could take care of both."  *Id*.  The court is not convinced, first of all, that Defendant's 64-year-old brother with arthritis needs a caregiver, or that his brother is unable to provide care for his mother.  But even assuming his mother and brother need care, Defendant does not show that others (such as his other siblings or family members) are unavailable to provide for their needs.  The court does not find extraordinary and compelling reasons warranting compassionate release under step one of the test adopted in *McGee*.

---

6       Defendant began inhaling gasoline at the age of ten (10) and was introduced to marijuana at the age of fourteen (14).  PSR at ¶ 51.  He used marijuana daily for "quite a long time."  *Id*. He also smoked methamphetamine.  *Id*.

7       *See*       https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited September 21, 2023).

The court has also considered the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, under step three of the test.  The 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed –
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established . . . in the guidelines . . . ;
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . ;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)-(7).

Defendant has served approximately 21 years of his life sentence.  Defendant claims that he has "taken a lot of educational programs" and received his GED during this time, which is commendable.  He asserts that he has maintained employment and made restitution payments while incarcerated, which is also commendable.  Defendant reminds the court that "elderly offenders have the lowest rate of recidivism of all types of offenders," and the court notes that he is classified at a low risk recidivism level by the BOP.  [Doc. 125 at 12; Doc. 129-3 at 2].

Still, Defendant has incurred five disciplinary infractions while incarcerated.  [Doc. 129-4].  The court is also mindful that Defendant's criminal history dates back to 1991.  PSR at ¶¶ 34-36, 39-41.  In 2001, Defendant entered a plea of guilty to second degree arson in Adair County District Court.  *Id.* at ¶ 36.  The following year, in October of 2002, Defendant murdered Billy Dean Johnson, Sr.  The Government reminds the court that "Defendant walked into a home in the Cherry Tree community of Stilwell, OK and fatally shot a man – whom he did not know - multiple times with a rifle."  [Doc. 129 at 21].  Defendant's killing of Mr. Johnson was disturbing, and a very serious crime.  PSR at ¶¶ 9-10.  Mr. Johnson was survived by his wife, one daughter and three

sons, numerous siblings, one grandson, numerous nieces, nephews, other relatives and friends.[8] Notably, one of the sons, Billy Johnson, Jr., was in the home when his father was murdered. *Id.* at ¶ 10. According to the PSR, the victim's son "stated that he heard what he believed was three gun shots come from [the living room/kitchen] area," that the son "positioned himself where he could see the area where the defendant was, [and] he saw Mr. Vann holding the rifle," that the son "described that he believed Mr. Vann was swinging the rifle in [the son's] direction, at which point he fled," and that "[a]s he fled, additional shots were fired." *Id.* While awaiting trial in this case, Defendant was incarcerated at the Muskogee City/County Detention Facility in Muskogee, OK. *Id.* at ¶ 17. He made phone calls, using a monitored/recorded telephone service, to the residence of his mother. *Id.* The PSR noted that a review of a portion of the recorded telephone calls revealed "that during conversations with his family members, the defendant attempted to persuade them as to what their testimony should consist of and what they would voice regarding this case." *Id.* The calls contained "evidence of witness tampering and an attempt by the defendant to obstruct or impede the administration of justice in this matter." *Id.* Based on an adjusted offense level of forty-five (45) and a criminal history category of III, the guideline sentencing range for Defendant was life imprisonment. *Id.* at ¶ 57. Life imprisonment is the appropriate sentence for first-degree murder if a sentence of death is not imposed. *See* 18 U.S.C. § 1111(b). On balance, the § 3553(a) factors do not support a sentence reduction under step three of the test adopted in *McGee*. To release Defendant, a convicted murderer, from prison at this time would diminish the seriousness of his crimes, would not promote respect for the law or afford adequate deterrence to criminal conduct, and would not serve the need of protecting the public from future crimes.

Lastly, Defendant asserts that "the crime for which he was convicted did in fact occur on an Indian Allotment that was subsequently extinguished," that the Federal Government had no jurisdiction in the case "[b]ecause the allotment had been extinguished," and that "this case should have been remanded to the State of Oklahoma for adjudication."[9]   [Doc. 125 at 12-13]. Defendant's argument is without merit. Defendant is a Native American, and he murdered a man

---

[8]      *See* "Additional Information Received Concerning Victim Impact and Restitution," pages two and three of the Addendum to PSR.

[9]      Defendant previously raised the jurisdictional claim, along with claims including ineffective assistance of counsel, in a § 2255 motion. [Doc. 98]. In the § 2255 motion, he specifically argued that "the U.S. District Court lacked jurisdiction to convict me or sentence me for a murder that did NOT occur in Indian Country." *Id.* at 7.

in the Cherry Tree community of Stilwell, OK, which is located within the Cherokee Nation's reservation boundaries.[10]  [Doc. 11].  Addressing the merits, the Government correctly points out that "[b]ecause Defendant is an Indian, because the crime occurred on an Indian reservation, and because *McGirt* did not announce a new law or a punishment for a new crime, federal law – not state law – has always controlled in Defendant's case."  [Doc. 129 at 25].  *See McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020).

Still, Defendant is asserting a jurisdictional claim within his compassionate release motion. Such claim is specifically governed by 28 U.S.C. § 2255.  In *United States v. Wesley*, 60 F.4th 1277 (10th Cir. 2023), the Tenth Circuit addressed whether a federal prisoner could bring a compassionate release motion based on alleged errors in his sentence, a claim governed by § 2255. The Tenth Circuit provided the following guidance:

> When a federal prisoner asserts a claim that, if true, would mean "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack," § 2255(a), the prisoner is bringing a claim governed by § 2255.  He cannot avoid this rule by insisting he requests relief purely as an exercise of discretion rather than entitlement.

*Wesley*, 60 F.4th at 1288.  The Circuit ultimately held "that an 18 U.S.C. § 3582(c)(1)(A)(i) motion may not be based on claims specifically governed by 28 U.S.C. § 2255."  *Id*. at 1289.  Defendant cannot raise his jurisdictional claim (or other § 2255 claims) within a compassionate release motion.  The court must dismiss this aspect of Defendant's motion, as an unauthorized successive § 2255 motion, for lack of jurisdiction.  Further, since the court is dismissing the unauthorized successive § 2255 motion on procedural grounds, Defendant must satisfy a two-part standard to obtain a certificate of appealability.  Defendant must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Defendant failed to make the required showing under the second part of the standard, and there is no need to address the constitutional question.  Defendant may not file a second or successive § 2255 motion unless he first obtains an

---

[10]     *See* https://www.cherokee.org/about-the-nation/maps/ (last visited September 21, 2023).

order from the Circuit authorizing the district court to consider the motion. Absent such authorization, a district court lacks jurisdiction to address the merits of a second or successive § 2255 motion. Therefore, pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, a certificate of appealability will be denied.

Defendant's motion for compassionate release [Doc. 125] is DISMISSED IN PART FOR LACK OF JURISDICTION and DENIED IN PART. A certificate of appealability, on the portion of the court's order dismissing Defendant's motion as an unauthorized successive § 2255 motion, is DENIED.

It is so ordered this 22nd day of September, 2023.

_____
THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA